# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs December 7, 2011

## MELVIN CRUMP v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Davidson County**
**No. 2004-D-3137     Walter Kurtz, Judge**

**No. M2011-00189-CCA-R3-PC - Filed August 3, 2012**

Petitioner, Melvin Crump, was convicted of first degree premeditated murder, felony murder in perpetration of a rape, and felony murder in perpetration of larceny.  The trial court merged Petitioner's convictions, and Petitioner was sentenced by the jury to life imprisonment.  On direct appeal, this Court affirmed Petitioner's conviction and sentence.  A summary of the facts underlying Petitioner's conviction can be found in this Court's opinion in the direct appeal.  *State v. Melvin Crump*, No. M2006-02244-CCA-R3-CD, 2009 WL 723524 (Tenn. Crim. App. at Nashville, March 18, 2009), *perm. app. denied*, (Tenn., Aug. 24, 2009).  Petitioner sought post-conviction relief on the grounds that his trial counsel was ineffective.  The post-conviction court denied relief after an evidentiary hearing.  After a careful review of the record, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and D. KELLY THOMAS, JR., JJ., joined.

David M. Hopkins, Nashville, Tennessee, for appellant, Melvin Crump.

Robert E. Cooper, Jr., Attorney General and Reporter; Meredith Default, Assistant Attorney General; Victor S. (Torry) Johnson, III, District Attorney General; and John Zimmerman, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

*Post-conviction hearing*

At the post-conviction hearing, Petitioner testified that he was serving a life sentence for his conviction.  He testified that he was represented at trial by two court-appointed

attorneys. Petitioner testified that he asked his trial counsel to subpoena and call as a witness "the doctor that [sic] did the DNA testing." Petitioner testified that in 1988, DNA was taken from samples of his hair, saliva, blood and sperm pursuant to a search warrant following his arrest for the crimes for which he was convicted. Petitioner testified that he discovered in 2003 that his semen sample "had been removed from [his] rape kit." After he was re-indicted in 2003, Petitioner's trial counsel told him that "the DNA expert that was out of California had stated that he had got [sic] a positive DNA match" using Petitioner's blood sample. Petitioner testified that his trial counsel was ineffective for failing to call the DNA expert as a witness at trial because, according to Petitioner, DNA taken from a blood sample cannot be matched to DNA taken from semen stains, and because Petitioner's semen sample was removed from his rape kit, he believed it was impossible for a positive DNA match to have been made.

Petitioner also testified that the State was allowed at trial to introduce DNA evidence that had previously been suppressed. The DNA evidence that was introduced by the State was "a face rag, a towel, and a sheet that had already been suppressed by [the trial court]." Petitioner testified that he discussed this issue with trial counsel, and "they didn't give [him] no [sic] input on [it]." Petitioner also "questioned the judge about it," pointing out to the trial court that the State presented evidence that had been suppressed, and the trial court "said, 'I [sure] did.'" Petitioner testified that this happened on the fifth day of his trial. He also testified that on the same day, the prosecutor "told the jury that [Petitioner] had already been convicted for murder from back in 1983, and [Petitioner] wasn't even on the witness stand," and Petitioner's trial counsel did not object.

Petitioner testified that he did not testify at trial because his trial counsel told him that if he testified, the State would present evidence that Petitioner "had confessed to this murder. . . ." and that counsel's advice was incorrect. Petitioner testified that if he had testified at trial, he "would have let the jury know that [he] didn't have any involvement in this murder and rape. . . . [and] that the State has violated all of [his] Constitution [sic] Amendment rights and all of [his] Due Process rights, and they have violated all of their own Constitutional Amendment rights in order for them to try to get a conviction." Petitioner testified that he sought, unsuccessfully, to have trial counsel relieved and new counsel appointed.

Petitioner's trial counsel testified that he represented Petitioner in 1988 on Petitioner's original charges, which were dismissed by the State for lack of evidence. Trial counsel was appointed to represent Petitioner again in 2003 when Petitioner was re-indicted on the same charges, but counsel requested that another attorney who was more versed in death penalty cases be appointed as lead counsel; however, both attorneys "participated fully in all phases of the case." Counsel and lead counsel met with Petitioner at the prison where Petitioner was

incarcerated, as well as at the courthouse. Counsel discussed issues surrounding Petitioner's case on "numerous occasions."

Counsel testified that Dr. Warner, who obtained the biological specimens from Petitioner in 1989, testified for the State at a suppression hearing and at trial. Counsel hoped to point out defects in the chain of custody of the DNA evidence, and Dr. Warner's testimony was necessary to establish the chain of custody. Counsel did not recall having "prolonged or focused discussions" with Petitioner about whether to call Dr. Warner as a witness.

Counsel testified that he did not recall having a discussion with Petitioner about calling the DNA expert who performed the analysis. Counsel cross-examined the State's DNA expert, who was a supervisor at the California lab where the analysis was performed, but counsel did not insist on having the actual analyst testify because "[they] didn't want to perfect the State's chain of custody for them, so that was one reason not to."

Counsel testified that he "provided fairly strong advice to [Petitioner] that it would be a big mistake" to testify because he would be subject to cross-examination regarding his prior conviction and an audiotaped confession statement made by Petitioner. Counsel weighed the value of Petitioner's testimony against the potential harm caused by Petitioner taking the stand and believed "it would be a mistake for him to testify." Counsel testified that he and lead counsel "discussed it with [Petitioner] at considerable length on multiple occasions, [and Petitioner] was not always in agreement with [them]." Counsel recalled that the trial court conducted a *Momon* (*v. State*, 18 S.W.3d 152 (Tenn. 1999)) hearing.

Counsel explained that he and lead counsel "presented the case as vigorously as [they] could regarding the planting of [DNA] evidence [by law enforcement]" at a suppression hearing. The trial court ruled that biological specimens taken from Petitioner for identity purposes be excluded, but that the State be allowed to "re-secure samples for retesting." The trial court did not exclude DNA evidence from the crime scene. At trial, counsel presented a defense theory that the police investigation was flawed. Counsel testified that the defense "presented as strong a case regarding the planting of evidence that [they] felt was compatible with not alienating the jury so much that [they] would lose the death penalty sentencing phase."

Counsel testified that the prosecutor did not refer to Petitioner's 1983 conviction for murder during the State's closing argument. Counsel testified that the trial court made a pretrial ruling regarding limitations on references to Petitioner's incarceration for a previous conviction, and counsel recalled that the prosecutor "used a term or two in his closing argument . . . that . . . seemed to cross that line or tiptoe across it at a minimum," and counsel objected to the prosecutor's remarks. Counsel testified, "if [Petitioner] has a contrary

memory, I think he's probably thinking of the sentencing phase when it did come into evidence."

At the conclusion of the hearing, the post-conviction court made oral findings, which we reference later in this opinion, and the court denied Petitioner's request for post-conviction relief in a written order incorporating those findings.

*Analysis*

To be successful in a claim for post-conviction relief, the petitioner must prove all factual allegations contained in the post-conviction petition by clear and convincing evidence. *See* Tenn. Code Ann. § 40-30-110(f) (2006). "'Clear and convincing evidence means evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" *State v. Holder*, 15 S.W.3d 905, 911 (Tenn. Crim. App. 1999) (quoting *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 901 n. 2 (Tenn. 1992)). Issues regarding the credibility of witnesses, the weight and value to be accorded their testimony, and the factual questions raised by the evidence adduced at trial are to be resolved by the post-conviction court as the trier of fact. *See Henley v. State*, 960 S.W.2d 572, 579 (Tenn. 1997). Therefore, we afford the post-conviction court's findings of fact the weight of a jury verdict, with such findings being conclusive on appeal absent a showing that the evidence in the record preponderates against those findings. *Id*. at 578.

A claim of ineffective assistance of counsel is a mixed question of law and fact. *See State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). We will review the post-conviction court's findings of fact *de novo* with a presumption that those findings are correct. *See Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001). However, we will review the post-conviction court's conclusions of law purely *de novo*. *Id*.

"To establish ineffective assistance of counsel, the petitioner bears the burden of proving both that counsel's performance was deficient and that the deficiency prejudiced the defense." *Goad v. State*, 938 S.W.2d 363, 369 (Tenn. 1996) (citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064 (1984)). In evaluating whether the petitioner has met this burden, this Court must determine whether counsel's performance was within the range of competence required of attorneys in criminal cases. *See Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn.1975).

Petitioner made five allegations of ineffective assistance of counsel in his amended petition for post-conviction relief: 1) trial counsel was ineffective for not calling Petitioner as a witness and for failing to adequately advise him about whether or not to testify in his own defense; 2) trial counsel was ineffective for failing to call as a witness the unnamed

individual who tested the DNA samples collected in this case; 3) trial counsel was ineffective for failing to subpoena and cross-examine the doctor who performed DNA testing on the evidence introduced at trial (which we cannot distinguish from Petitioner's second allegation); 4) trial counsel was ineffective for failing to object to DNA evidence that the trial court had previously suppressed; and 5) trial counsel was ineffective for not objecting to evidence that Petitioner had previously been convicted for another homicide in 1983.

We first address Petitioner's claim that trial counsel was ineffective for inadequately advising Petitioner as to his right to testify or not to testify in his own defense. Petitioner contends that he was prevented from testifying due to trial counsel's erroneous advice. We begin our analysis by noting the following exchange between the post-conviction court and Petitioner's post-conviction counsel:

THE COURT: I was glad to hear [trial counsel] say that we had a *Momon* hearing because I would be appalled if I had forgotten somehow in a case like this to have a *Momon* hearing. How can you reconcile that allegation with the *Momon* hearing, or did I do a bad job at the *Momon* hearing?

[POST-CONVICTION COUNSEL]: Well, Your Honor, all I can submit is that [Petitioner], as he testified, relied on the advice of counsel.

. . . .

THE COURT: Well, we have an interesting thing. We have had 20 years of litigation in [t]he Court of Criminal Appeals and the Tennessee Supreme Court about defendant's [sic] testifying or not testifying and who should have done what to who, so we had the *Momon* case.

The Tennessee Supreme Court wanted to solve this for all time, we wanted to have a failsafe mechanism. So we now have the failsafe mechanism, the *Momon* hearing, but you are still saying the *Momon* hearing is not good enough?

. . . .

[POST-CONVICTION COUNSEL]: Well, again, Your Honor, the point is that when a defendant steps into a *Momon* hearing, [t]he Court does not delve into the relationship in any detail between that person and their attorney.

. . . .

> THE COURT: Okay. So we need a *Momon* hearing for a *Momon* hearing? Do we need a souped up *Momon* hearing?

In its oral findings at the conclusion of the hearing, the post-conviction court found:

> Furthermore, even if we should – even if it was possible to get over that hurdle [regarding the *Momon* hearing] for the sake of argument, we have a finding by [the Court of Criminal Appeals in the direct appeal] that the defendant may have offered testimony that he had nothing to do with the crimes on trial, the physical and testimonial proof against him stands in stark contrast, and that the judge had made a credibility assessment, and the judge adheres to that credibility assessment of the defendant's testimony.

> His testimony would not have changed the outcome of this case.

In *Momon*, the Tennessee Supreme Court held that the right of a defendant to testify on his own behalf is a fundamental constitutional right that may only be waived personally by the defendant. To ensure that a defendant's right to testify has indeed been personally waived, the court adopted procedural guidelines that call for the defense counsel to request a jury-out hearing to demonstrate that a defendant's waiver of the right to testify has been knowingly, intelligently, and voluntarily made. *See Momon*, 18 S.W.3d at 162-63.

There is evidence that Petitioner did personally waive his right to testify at trial. Trial counsel specifically recalled the trial court having conducted a *Momon* colloquy in this case. There is more than sufficient evidence that trial counsel discussed the advantages and disadvantages of testifying with Petitioner on more than one occasion prior to trial and that Petitioner knowingly and intelligently made the decision to not take the stand. The wisdom of this decision is apparent from trial counsel's testimony, which the post-conviction court accredited, regarding Petitioner's criminal history. We conclude that there is nothing in the record to suggest an abridgement of Petitioner's constitutional rights. Defendant is not entitled to relief on this issue.

Next, Petitioner asserts generally that "[t]rial counsel failed to adequately challenge the DNA evidence presented by the State." Included in this assertion are Petitioner's arguments that counsel was ineffective for failing to subpoena and call as a witness "the doctor who had performed the actual testing of the DNA," and by not presenting evidence that Defendant's semen was placed at the crime scene and "other irregularities in the police investigation."

-6-

The post-conviction court found as follows:

> . . . . As far as the DNA is concerned, [trial counsel] has cogently explained the reasons for not doing anything further beyond the examination of [the State's expert] Mr. Keel.

> Again, the cross-examination of Mr. Keel is summarized [in this Court's opinion on direct appeal], it appears to be fairly inclusive. There were additional witnesses from the State prepared to testify. [Trial counsel] has explained the reason for them not being offered, and I think it is well within the standard for effective assistance of counsel.

> Furthermore, I am not presented any proof that would allow me to find there was any prejudice against the then defendant, now petitioner. There is no indication here that anybody has said this was not his DNA. . . .

The post-conviction court further noted in its findings, "I just can't speculate what [the witness] might or might not have said." Petitioner has failed to prove prejudice because he did not produce as a witness at the post-conviction hearing the witness he alleges his trial counsel should have called at trial. The burden a petitioner must meet upon alleging that counsel failed to discover, interview or present witnesses in support of his or her defense is the presentation of these witnesses "at the evidentiary hearing." *Black v. State*, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). In *Black*, this Court stated that a defendant petitioning for post-conviction relief based on his trial counsel's failure to call a known witness is "not entitled" to such relief "unless he can produce a material witness who (a) could have been found by a reasonable investigation and (b) would have testified favorably in support of his defense if called." *Id*. at 758.

As noted by the post-conviction court, this Court is not allowed to "speculate or guess on the question of whether further investigation would have revealed a material witness or what a witness's testimony might have been if introduced by defense counsel." *Black*, 794 S.W.2d at 757. Thus, applying an objective standard of reasonableness, we find no deficient representation based on the evidence before us on appeal. We also find the Defendant has failed to demonstrate that his trial counsel's investigation or trial preparation prejudiced him in any way. As the post-conviction court noted, Petitioner produced no proof at the evidentiary hearing that the results of the DNA testing were flawed or that his DNA was planted at the crime scene. Defendant is not entitled to relief on this issue.

As to allegations four and five, Petitioner barely mentions them in his brief, stating, "Trial counsel also failed to object to the State's introduction of previously suppressed

evidence, and [counsel was ineffective] by not objecting to the State telling the jury that Appellant had been convicted of a previous murder."

Based on the record before us, we conclude that Petitioner has failed to demonstrate that counsel's performance was deficient or that he was prejudiced. Counsel testified at the post-conviction hearing that only the DNA specimens taken from Petitioner were suppressed and that the State was allowed to "re-secure samples for retesting." The trial court's ruling did not exclude DNA evidence taken from the crime scene. Moreover, Petitioner presented no evidence at the post-conviction hearing that he was prejudiced by the alleged deficiency.

Regarding Petitioner's claim that trial counsel was ineffective for failing to object to the prosecutor's alleged comments regarding Petitioner's prior conviction, the post-conviction court questioned Petitioner's post-conviction counsel as follows:

> THE COURT: Trial counsel was ineffective by allowing the State to introduce evidence that the petitioner had been previously convicted of another homicide in 1983.
>
> If the State did that, can you point out in the transcript where that happened at the guilt or innocence phase?
>
> [POST-CONVICTION COUNSEL]: .... [Petitioner]'s recollection of what the State said is contrary to what the transcript shows.
>
> THE COURT: Well, I mean, again, this judge has made legal errors in my judicial – my 28 [year] judicial career, but I would be amazed if I would have allowed [the prosecutor] to mention the prior murder at the guilt or innocence phase. If you can't point it out to me in the transcript, then there is just [no] proof to carry it.
>
> [POST-CONVICTION COUNSEL]: And I had those discussions with [Petitioner] and, as I said, his recollection of what happened in the trial was that the State did make those comments.
>
> Now, obviously in the penalty phase it was an aggravator – I mean, that was the aggravate [sic].

The trial court further found:

[T]here is absolutely no proof that the State mentioned the prior homicide at the guilt or innocence phase. I can only conclude that [Petitioner]'s memory as it relates to the penalty phase where the prior homicide was an aggravator, and counsel has been unable to point out to me any reference by the State's attorney to the prior homicide at the guilt or innocence phase.

Petitioner has failed to point to any evidence that would overcome the findings of the post-conviction court. Petitioner is not entitled to relief on this issue.

## CONCLUSION

Petitioner has failed to demonstrate that he received the ineffective assistance of counsel at trial. We affirm the judgment of the post-conviction court.

_____
THOMAS T. WOODALL, JUDGE